**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **v.** | ) |
| | ) **No. 26-mj-88** |
| **TIMOTHY HETZEL** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S**
**MOTION FOR PRETRIAL DETENTION**

Defendant Timothy Hetzel respectfully opposes the government's Motion for Preventative Pretrial Detention.  Based on a complaint charging one count of unlawful possession of a firearm in violation of 18 U.S.C. § 922 (g), the government requested pretrial detention of Mr. Hetzel pursuant to 18 U.S.C. § 3142(f)(1)(A), asserting that there are no conditions or combination of conditions that will reasonably assure the safety of the community or reasonably assure his return to court.  Mr. Hetzel, through counsel, respectfully requests that this Court release him pretrial pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987).  This Court must apply the presumption of release and require the government to show, by clear and convincing evidence, that no conditions or combination of conditions can be set by the Court to reasonably ensure the safety of the community.  Moreover, the government must show, by a preponderance of the evidence, that no conditions or combination of conditions can be set by the Court to reasonably ensure Mr. Hetzel's return to court.  The government cannot do so and Mr. Hetzel should be released.

I.      **Introduction**

1

Mr. Hetzel is a 35 year old man who has been lived his entire life in the DMV area. He was raised in Gaithersburg, MD and currently works as doing HVAC installation and maintenance. He attended Quince Orchard High School but did not achieve his high school diploma. He is single and currently lives in an apartment in Bethesda. His father, James Hetzel works in the area, though he primarily lives in Wisconsin. Mr. James Hetzel has agreed to be a third party custodian for his son to ensure that he will return to court.

Mr. Hetzel's criminal record is remarkable in that it lacks any hint of the kind of violence or dangerousness that the U.S. Attorney's Office repeatedly pronounces define the quality of cases appropriate for federal court. And Mr. Hetzel is not some repeat criminal. He has only one prior felony conviction for selling stolen property valued over $200, eight years ago. His other two convictions are misdemeanors (trespassing and theft) from 13 and 14 years ago. This is his first weapons *arrest* and he has no arrests of an assaultive nature either. The firearm allegation here is not involved in an offense, not used in drug trafficking or firearms trafficking and was not being used at the time it was recovered. If Mr. Hetzel was 100 miles north in the Third Circuit, Mr. Hetzel's complaint would be dismissed as unconstitutional as applied under *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2024) (en banc). There is no credible argument that he is remotely dangerous.

The argument that bears mention is that Mr. Hetzel is a risk of flight because Mr. Hetzel has an outstanding non-extraditable bench warrant in Montgomery and has had two other bench warrants in his history. But being brought into federal court is very different from traffic cases and following federal conditions of release will be more than motivating. The 2025 Maryland case involves shoplifting items from Walmart to include some antifreeze, a chicken sandwich,

hotdogs, a backpack and boots.  The Maryland cases were not serious so there was no meaningful supervision.  All three warrants were non-extraditable and were not able to be located in NCIC.  It is unclear whether Mr. Hetzel even received proper notice for these court dates.

In contrast, Mr. Hetzel is facing serious consequences in this case.  As a result, his father is willing to stay with him to provide the Court assurance that he will return to Court.  Moreover, there are factors in Mr. Hetzel's case, such as the inoperability of the firearm, that are likely to limit his exposure.

## II.    Legal Standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(b) and (c)(1)(B).  The Supreme Court has explained:  "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose.").  "Nothing in this section shall be construed as modifying or limiting the presumption of innocence."  18 U.S.C. § 3142(j).  As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons."  *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.).  Any "[d]oubts regarding the propriety of release should be

resolved in favor of the defendant." *Id*. at 1405.  No rebuttable presumption for detention applies in this case so the presumption of release persists.

It is the government's burden to demonstrate by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community.  *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.).  Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence that Mr. Hetzel be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released.  18 U.S.C. § 3142(g).

The D.C. Circuit reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community).

**III.    Argument**

The government cannot meet its burden here and Mr. Hetzel should be released under conditions. The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably assure Mr. Hetzel's appearance at trial and protect the public.

### A. In This Case, the Government Has Not Met Its Burden of Proving That Mr. Hetzel Poses a "*Serious*" Risk Of Flight Under § 3142(f)(2)(A).

The intentional language of "serious risk of flight," requires an interpretation that offers the word "serious" a meaning. That is because Mr. Hetzel should be released on conditions as there is no "serious risk that [he] will flee" the jurisdiction. Ordinary "risk of flight" is not a factor in § 3142(f). There is some risk of flight in every criminal case; "serious risk" of flight means something more.

According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009); *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 698 (1995) (noting interpretation of statute should be reluctant to treat statutory terms as surplusage). Indeed, Congress has prescribed "serious risk of flight" and the risk of non-appearance as separate requirements. *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *8 (M.D. Tenn. May 27, 2021) (citing *Gibson*, 384 F. Supp. 3d at 965) ("Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward."). A risk of flight suggests an intentional and active effort to put oneself outside of the purview of the court, whereas non-appearance can cover negligent and other non-intentional circumstances. *Id.* Further, if a case does not involve a "serious risk" of flight then the government's request for detention fails at step one. *Id.* "The

ordinary meaning of 'flee' [under (f)(2)(A)] suggests volitional conduct." *United States v. Ailon-Ailon*, 875 F,3d 1334, 1338 (10th Cir. 2017).

The Bail Reform Act's legislative history also makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[1]  For example, the case relied on in the legislative history as extreme and unusual enough to justify detention on the grounds of serious risk of flight involved a defendant who was a fugitive and serial impersonator who had failed to appear in the past, and had recently transferred over a million dollars to Bermuda.  *See United States v. Abrahams*, 575 F.2d 3, 4 (1st Cir. 1978).  The government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and no such showing has been made here.

The government has not demonstrated that Mr. Hetzel is a serious risk of flight or set forth any facts sufficient to find the risk of flight is extreme or unusual.  In this case, the government contends that Mr. Hetzel's failures to appear in traffic and misdemeanor shoplifting offenses are sufficient to prove that he is a serious risk of flight in this case.  But Mr. Hetzel's charges are much more significant here, though importantly, do not carry any

---

[1] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances . . .* justifies pretrial detention"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

mandatory sentence.  He had no conditions of supervision where as he will have significant obligations, including a father who will make sure he will fulfill his court obligations. Moreover, the government provides zero evidence that Mr. Hetzel has access to funds to flee.

Mr. Hetzel has lived in the DMV area for his entire life.  His father will be by his side throughout this case.  His friends with whom he grew up are here.  His life is here. Additionally, Mr. Hetzel will be ordered to turn in his passport and not seek out another passport or travel document.  The government can also put Mr. Hetzel on the no fly list, as they did with many defendants charged after the events of January 6, 2021.  Simply stated, missing traffic court dates or a misdemeanor court date (that he may not have had written notice of) is not sufficient to constitute a "serious risk of flight" for the purposes of 18 U.S.C. § 3141(f)(2).

Furthermore, a defendant should not be detained as a "serious risk" of flight when the risk of non-appearance can be mitigated by conditions of release. The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process.  The government has not met its burden to seek detention of Mr. Hetzel as a "serious risk of flight" and, as stated below, there are conditions that can reasonably ensure his appearance at court.

### 1.  The Nature and Circumstances of the Offense

The Complaint charges Mr. Hetzel with unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g).  There are no allegations that Mr. Hetzel used or brandished the firearm or resisted arrest.  The firearm does not have a high capacity magazine,

laser sights or a giggle switch.  He is not alleged to have fled or tossed the weapon.  Mr. Hetzel was stopped and arrested because he was alleged to have been seen checking to make sure the weapon was not chambered – to ensure that it was safe.  He then returned it immediately to its safe position.  When he was arrested, Mr. Hetzel did not have the firearm in his immediate possession.[2]  He was cooperative upon arrest.  Given that there is no presumption for detention, and that the firearm was not used against any individual, this factor should weigh in favor of release.

In fact, individuals charged with firearms offenses have been repeatedly released in this District, including in cases where the defendant allegedly fled from police and discarded the firearm.  *See, e.g., United States v. Robinson*, No. 24-cr-95 (defendant fled from police; on probation at the time of arrest); *United States v. Griffith*, No. 24-cr-56 (defendant fled from police); *United States v. Wiggins*, No. 23-cr-109 (defendant fled from policed and tossed firearm; firearm fitted with a "giggle switch"); *United States v. Jones*, No. 23-cr-154 (defendant fled from police; case later dismissed after suppression hearing); *United States v. Hicks*, No. 19-cr-288 (firearm allegedly tossed).

Unlike many others who have been released, Mr. Hetzel was not in possession with any contraband when he was arrested.  *Cf. United States v. Abass*, 25-cr-79.  Mr. Abass was allegedly in possession of painkillers that the prosecution argued was inconsistent with personal use, that is 32 oxycodone pills. He was released, has been compliant and has since been sentenced to probation.  Other individuals charged with possession with intent to distribute controlled

---

[2] It is also unclear how law enforcement had probable cause to stop Mr. Hetzel when they would have no reason to believe that he was a prohibited person or not licensed to carry a concealed weapon in the District at the time he was stopped.

substances and possession of firearms have been released in this District, notable because the charge triggers a rebuttable presumption of detention.  *See, e.g., United States v. Wiggins*, No. 23-cr-10; *United States v. Jones*, No. 19-cr-91-RMC, ECF No. 8; *United States v. Brooks*, No. 20-cr-206-03-RDM, ECF No. 29.  The nature and circumstances of the case cannot alone require detention in this case.  The Magistrate Judge carefully considered the nature and circumstances of the offense and found that cases with far worse circumstances relating to other crimes, the defendant's conduct during arrest, and the firearm itself, resulted in pretrial release.

### 2.  The Weight of the Evidence

The weight of the evidence in this case may favor detention but it is far from determinative.  Judge Reyes has recently opined that the weight of the evidence is the "least important factor and rarely favors the defendant at this stage." *United States v. Mario Mares*, 1:23-CR-252(ACR) (Memorandum Opinion at 5). Even at this stage, the government's evidence has significant flaws as to the initial seizure of Mr. Hetzel and as to the operability of the firearm itself.

### 3.  The History and Characteristics of Mr. Hetzel

Mr. Hetzel is a thirty-five year old man who has lived in the area for his entire life.  He has a minimal record with petty offenses.  His only felony was for selling stolen goods ten years ago. He has no violent offenses, no allegations of any kinds of assaultive or even threatening behavior and no prior gun charges or weapons offenses.

Admittedly, Mr. Hetzel failed to appear for court in 2017, has missed traffic court dates and also did not appear for court in a case stemming from shoplifting from Walmart.  It is unclear whether he was actually served in that case – the docket in mdcasesearch.com reveals a

bench warrant being issued on October 27, 2025 but there is an entry for a warrant being recalled on the same day.  It also shows a mail returned as undeliverable on November 26, 2025.  It should be noted that the docket notes that an active warrant was issued.

File Date: **10/27/2025**
Docket Entry Name: **Warrant Recalled/Quashed**

File Date: **10/27/2025**
Docket Entry Name: **Pre-Trial Docket Sheet**

File Date: **10/27/2025**
Docket Entry Name: **Failure to Appear**

File Date: **10/27/2025**
Docket Entry Name: **Bench Warrant Issued**

File Date: **11/26/2025**
Docket Entry Name: **Returned/Undeliverable Mail**

This case does not have the features of a casual state court misdemeanor.  The conditions available to the Court will be more than sufficient to reasonably assure that Mr. Hetzel will return.  Chief among them, Mr. Hetzel's father will make certain that he will. His father, James Hetzel, has decided to move in with his son and will live with him to make sure he fulfills all of his court obligations.  He is living in the area long-term because of work that he has here as a HVAC contractor.  As a bonus, Mr. James Hetzel is not only Mr. Hetzel's father but also Mr. Hetzel's employer.  James Hetzel will appear in court tomorrow and counsel proposes that the

Court appoint him to bring Mr. Hetzel to court hearings.[3]  In addition, if the Court has any other concerns, the Court can employ location monitoring technology.  Simply put, with the conditions available to the Court, the government is far from meeting its burden.

Finally, as the Court is aware, Mr. Hetzel has very limited resources and certainly not the resources to flee. *See United States v. Padilla¸* 585 F.Supp.3d. 32, 49 (D.D.C. 2021).

### 4.    The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Hetzel's Release

Similarly, the government has not and cannot provide clear and convincing evidence to support a finding that Mr. Hetzel would pose a danger to the community if released.  First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime.  *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring).  "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id*.  The government has not and cannot provide specific evidence to support a finding that Mr. Hetzel currently poses an unmitigable threat to public safety.  Stringent conditions of release can ensure the safety of the community.  Reiterating that the offense involved possessing a firearm and Mr. Hetzel has a prior conviction for which he has been punished and demonstrated rehabilitation, does not provide clear and convincing evidence to justify detention. Had they been, the legislature would have not declined to assign a rebuttable presumption of detention to a 922(g) offense or those under supervision for a firearm offense. This is especially true here where Mr. Hetzel's past criminal conduct is not violent, not assaultive and purely property related. In short, the government cannot articulate, with any

---

[3] The defense is not necessarily proposing that Mr. James Hetzel be ordered to reside with Mr. Hetzel but ultimately defers to the Court.

specificity, danger to any person or any category of persons because of Mr. Hetzel's release.

### 5.    Past Similar Cases That Resulted in Pre-trial Release

While the Court cannot and should not require that counsel provide an example of a similarly situation person who was released in the past to justify release, especially in a case where there is a presumption of release like this one, magistrate and district judges in D.D.C. have released individuals in the recent past with charges and circumstances that may be helpful to this Court.

In *United States v. Ulises Contreras,* 25-cr-181, the Magistrate Court denied the government's request for detention in a 28-count Conspiracy to Commit Wire Fraud case alleging a fraud scheme of over $700,000 of unemployment benefits during the COVID pandemic. Pointing out that the defendant was on probation at the time of the offense and that he faced a guideline range of 111 to 132 months, the government argued that he had a substantial incentive to flee.  The government also pointed to several bench warrants and unsuccessful periods of probation, as well as his citizenship of the Dominican Republic. Despite these arguments, Judge Howell upheld his release.

In *United States v. Lokesh Naik¸*19-cr-373 (TSC), this Court rejected the government's argument that the defendant posed a serious risk of flight.  In that case, the defendant was charged with aggravated sexual abuse.  His wife and family resided overseas and he had no employment or residence in the United States.  Despite a rebuttable presumption for detention, the Court found that there were conditions that it could fashion to reasonably assure that the would appear in court to face his charges.  He did appear and his case was dismissed mid trial.

In *United States v. Sakou Yates¸* 24-cr-89 (ACR), the District Court upheld the release of

an individual charged with 18 U.S.C. 924(c) who was indicted for possessing a machine gun

with an extended clip.  The defendant also was charged with possession with intent to distribute

cocaine.  Despite the fact that he contraband was found on his person and that he faced a 30 year

mandatory minimum, Mr. Yates was released.  His case was later dismissed by the government.

In *United States v. Nelson Bryant*, 25-cr-97, the defendant was allegedly seen by officers

pulling a handgun from his waistband and handing to someone who dropped it.  The defendant

fled and rhe gun was recovered with a high capacity magazine.  The defendant was released,

despite previous convictions for carjacking, attempt robbery and despite being under supervision

at the time of his arrest.  The District Court denied the government's appeal.  He remains on

release.

IV. **Statistics Showing that It Is Extremely Rare for Defendants on Bond to Flee or Recidivate Demonstrate that Mr. Hetzel Does Not Pose A Serious Risk of Flight or Danger to the Community.**

In this case, this Court should be guided by Administrative Office of the Courts statistics

showing that nearly everyone released pending trial appears in court and does not reoffend. In

fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and

98% did not commit new crimes on bond.[4]  Significantly, this near-perfect compliance rate is

equally evident in federal districts with very high release rates and those with very low release

rates.[5]  Even in districts that release two-thirds of all federal defendants on bond, fewer than 1%

---

[4] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[5] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42.  The failure-to-appear and rearrest rates for these

fail to appear in court and just over 2% are rearrested while released.[6]  The below chart reflects

this data:





**Federal Clients on Bond Rarely Flee or Recidivate (2019 Data)**

- 10 Districts with Lowest Release Rates
- 10 Districts with Highest Release Rates

### Conclusion

The government has not overcome the presumption of release in this case because it has

not met its weighty burden of demonstrating that there no conditions or combination of

conditions that will assure the safety of the community or that he is a serious risk of flight.  Mr.

Hetzel respectfully requests that the Court release him with appropriate conditions.

---

districts were calculated using Exhibit 1, AO Table H-15.  The districts with the lowest release
rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee,
S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina,
C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D.
Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New
York, W.D. Washington, D. Guam, D. Northern Mariana Islands.  *See* AO Table H-14A.

[6] *See* AO Table H-15; AO Table H-14A.

14

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500