UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Case No. 26-mj-88 |
| TIMOTHY JAMES HETZEL | : | |
| | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

Defendant Timothy James Hetzel should be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(E) because this case involves the possession of a firearm, and pursuant to 18 U.S.C. § 3142 (f)(2)(A) as there is a serious risk Hetzel might flee. On May 16, 2026, Hetzel was arrested after a Metro train passenger observed him loading a firearm as they rode on a Metro train in the late afternoon. The defendant was stopped on the Metro platform, and after he was positively identified, law enforcement searched him and found him to be in possession of a loaded, un-serialized Polymer80 firearm and ammunition. At the time of the offense, the defendant had an active bench warrant for failure to appear in Montgomery County, Maryland. The brazen nature of the defendant's possession and loading of an untraceable firearm while he rode on a public train, combined with Hetzel's history of nonappearance, demonstrate that detention is necessary in this matter. Accordingly, the government agrees with Pretrial Services' recommendation that no condition or combination of conditions can reasonably assure Hetzel's appearance in court or the safety of the community.

**FACTUAL BACKGROUND**

On May 16, 2026, at approximately 4:22 pm, law enforcement responded to a call from a fellow metro passenger who reported that an individual was armed with a weapon aboard Metro

Train ID #115, rail car number 7451. The individual was described as a white male, wearing a black shirt, Khaki pants, cowboy boots, and carrying a black bookbag and blue suitcase. Law enforcement located the described individual on rail car 7451, identified him as Timothy James Hetzel via his Maryland Learner's permit, removed him from the rail car, and placed him in handcuffs. According to the witness who made the initial observation, Hetzel had ammunition in his backpack, loaded his firearm, cocked it back, and placed it back into his black backpack while on rail car 7451.



*Figure 1: WMTA surveillance of what appears to be Hetzel reaching into a backpack.*



***Figure 2: A screenshot from WMTA surveillance, depicting Hetzel
matching the description provided by the witness: black shirt, Khakis,
cowboy boots, and carrying a black backpack and blue suitcase.***

Given this information, at approximately 4:42pm, law enforcement responded to the Woodley Park Metro Station where they approached Hetzel as he was about to deboard the metro train. They then took him off the train and upstairs to the outside platform where they conducted a pat down of Hetzel's outer garments and his backpack. At this point, the pat down yielded no results. Law enforcement then contacted the initial caller and brought the caller, at approximately 6:00 pm, to the Woodley Park Metro Station via a Metro cruiser to conduct a "show up." Under two hours, the caller who witnessed and reported the incident was able to confirm that the individual at Woodley Park Metro Station was the same individual from the train and recognized the same backpack.

After this confirmation, law enforcement then searched Hetzel's black bookbag and recovered a teal-covered firearm in the pocket of a brown jacket that was folded, in addition to ammunition.

3



***Figure 2: Hetzel's black backpack containing the folded brown jacket
in which the firearm was recovered.***



***Figure 3: The firearm and ammunition recovered from Hetzel's black backpack.***

## PROCEDURAL BACKGROUND

On May 19, 2026, a complaint was filed against Hetzel, charging him with Unlawful Possession of Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation of 18 U.S.C. § 922(g)(1); and Unlawful Possession of a Firearm (Prior Conviction) in violation of 22 D.C. §§ 4503(a)(1) and (b)(1). (ECF No. 1).

On May 20, 2026, Hetzel had his initial appearance on the complaint, and the Court set the

matter for a detention hearing on May 21, 2026.

## ARGUMENT

The Bail Reform Act of 1984 provides, in pertinent part, that the court "shall order" a defendant detained before trial if "no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In determining whether pretrial detention is warranted, the court considers four statutory factors: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)-(4).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the United States may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

The facts and circumstances in this case demonstrate that there are no conditions or combination of conditions that can reasonably assure either Hetzel's appearance or the safety of the community.

**I.      Nature and Circumstance of the Offense Support Detention.**

Hetzel was arrested after being found in possession of a loaded firearm and ammunition. Merely possessing a firearm in public "poses an inherent risk of danger to the community." *United States v. Blackson*, No. 23-cr-25 (BAH), 2023 WL 1778194, at *7 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases for the proposition that "unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public").  The offense is so serious that it carries a maximum sentence of 15 years in prison. *See United States v. Simpson*, No. CR 25-261 (RBW), 2025 WL 3211574, at *4 (D.D.C. Nov. 18, 2025).

Here, Metropolitan Police received a tip that a passenger on the Metro train observed Hetzel with ammunition, loaded the firearm, and placed it back into his backpack. Hetzel actively armed himself while riding public transportation in the middle of a Saturday afternoon. The presence of a loaded firearm in a public transportation setting presents a danger to passengers and the public at large. The charged conduct demonstrates not only unlawful possession of ammunition and a firearm but also deliberate handling and concealment of a loaded weapon in a crowded public setting. Even more so, the firearm was a Polymer80-style handgun, commonly referred to as a "ghost gun." This means the firearm lacked a serial number rendering it effectively untraceable by law enforcement. Between arming himself on public transport and possessing an un-serialized firearm, these circumstances heighten the seriousness of the offense and support detention.

**II.     The Weight of the Evidence Against Hetzel is Strong.**

The weight of the evidence in this case is strong. A witness directly observed Hetzel load the firearm. The witness specifically noted that Hetzel was a white male, wearing a black shirt, Khaki pants, cowboy boots, and carrying a black bookbag and blue suitcase.

6

Based on that unique description, officers were able to locate Hetzel and subsequently recover the firearm and ammunition from the black bookbag that Hetzel was carrying at the time. The eyewitness account is corroborated by the surveillance camera footage showing the defendant on the Metro train, and then the subsequent physical recovery of the ammunition and firearm.

There were thirteen 9mm rounds inside the inserted magazine and an additional fifty-seven rounds of 9mm ammunition. Notably, the ammunition matched the caliber of the firearm.

In sum, the strength of the evidence against Hetzel favors detention. *See Blackson*, 2023 WL 1778194, at *10 ("[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that . . . may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true.").

### III.    Hetzel's History and Characteristics Merit Detention.

Hetzel's criminal history is short but significantly riddled with non-appearances and failing to comply with court orders and conditions of release. In 2018, Hetzel was convicted in Stafford County Circuit Court, Virginia, case number CR16001159-00 of a felony offense for Stolen Property with Intent to Sell. For that crime, he received a sentence of 2 years, with 1 year and 2 months suspended, and 5 years' probation. In that case, Hetzel violated the terms of his probation, and he was revoked on June 19, 2020, and sentenced to 10 months confinement.

In 2018, Hetzel was also convicted in Stafford County Circuit Court, Virginia, case number CR17001263-00 of a felony offense for Failure to Appear on a Felony Offense. For that crime, he received a sentence of 12 months, fully suspended, and 5 years' probation.

In 2013, Hetzel was convicted in Montgomery County, Maryland case number 121739C for theft, $1,000 to $10,000. For that offense he received 3 years of supervised probation and a fine. Notably, there were *multiple* bench warrants and probation violations in that case.

Hetzel currently has an active bench warrant in Montgomery County, Maryland case number D-06-CR-25-000712, for failing to appear in District Court for trial that was scheduled for October 27, 2025. In that case, he was charged with theft, less than $100; theft, $100 to under $1,500; and theft scheme: $100 to greater than $1,500.

Lastly, per the Pre-trial Services Report, Hetzel has two additional active bench warrants in Montgomery County for traffic violations that were issued on October 27, 2025, and November 17, 2025, respectively. *See* Pre-trial Services Report, p. 5.

Hetzel's history clearly reflects a pattern of flagrant disregard for court authority, repeated nonappearances, and noncompliance with supervision conditions. The active bench warrant is particularly significant and strongly indicates that Hetzel cannot be relied upon to appear as required.

**IV.    Hetzel Presents a Danger to the Community and Poses a Risk of Non-Appearance.**

Finally, Hetzel presents a clear danger to the community. The standard for establishing dangerousness is clear and convincing evidence, which is met under the facts presented here. Specifically, Hetzel possessed a firearm and ammunition aboard a moving metro train occupied by other passengers during the afternoon hours and proceeded to load the firearm while the train was in transit.  Carrying a loaded firearm and ammunition aboard public transportation creates a substantial public safety risk. The mere fact that Hetzel actively loaded the firearm shortly before placing it back into his bookbag raises concerns regarding dangerousness and intent. Moreover, his manipulation of the firearm while riding on the metro train increased the chances of an accidental discharge that placed his fellow passengers at risk of bodily injury. Additionally, Hetzel's repeated failures to appear, probation violation history, and continued criminal conduct indicate that court supervision and release conditions would not sufficiently mitigate the risk posed.

Hetzel poses an acute risk of flight and non-appearance. The applicable standard for establishing risk of flight is by a preponderance of the evidence, which is satisfied here by Hetzel's documented history of nonappearance and noncompliance. This offense occurred while he was already subject to an active warrant in Montgomery County, Maryland for failing to appear in District Court for a trial that was scheduled for October 27, 2025. *See* Pretrial Services Report, p. 3. His history is further riddled with non-appearances and probation violations, as described in Section III, *supra*. Further, placement with a third-party custodian would not reasonably mitigate the risk of danger or nonappearance in this case. Hetzel's history reflects repeated disregard for court's orders and supervision. These repeated instances of noncompliance demonstrate that community-based supervision and court-imposed conditions have not been effective in ensuring lawful behavior.

## CONCLUSION

Given the seriousness of the offense conduct, the strength of the evidence, Hetzel's repeated nonappearances, and the danger to the community, the government respectfully submits—and concurs with Pretrial Services' recommendation—that no condition or combination of conditions can reasonably assure Hetzel's appearance or the safety of the community and therefore detention pending trial is warranted.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    */s/ Lauren Ibanez*
LAUREN IBANEZ
Assistant United States Attorney
NJ Bar No. 261642019
601 D Street NW, Washington, D.C. 20530
Phone: 202-252-7566
Lauren.Ibanez@usdoj.gov

9